UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZEBEDEE LOVE, II,

                                      No. 12-12315

      Plaintiff,                 District Judge Avern Cohn

v.                                Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Zebedee Love, II brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #13] and Plaintiff's Motion for Summary Judgment be DENIED [Docket #8].

**I. PROCEDURAL HISTORY**

Plaintiff applied for SSI on January 30, 2008, alleging disability as of February 1, 1992 (Tr. 127-129). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 23, 2010 in Flint, Michigan before Administrative Law Judge ("ALJ")

Andrew G. Sloss (Tr. 33). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 36-42), as did vocational expert ("VE") Pauline McEachin (Tr. 42-45). On July 27, 2010, ALJ Sloss found Plaintiff not disabled (Tr. 27-28).

On March 30, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-7). Plaintiff filed suit in this Court on May 25, 2012.

## II. BACKGROUND FACTS

Plaintiff, born January 24, 1967, was 43 at the time of the administrative decision (Tr. 28, 127). He completed 11th grade (Tr. 170). He worked previously as an assembler, inspector, and production assistant supervisor (Tr. 165). He alleges disability as a result of a back injury, learning disability, and migraine headaches (Tr. 164).

**A. Plaintiff's Testimony**

Plaintiff testified that he did not possess additional training or education beyond 11th grade (Tr. 36). He stated that he did not have a current driver's licence (Tr. 36). He reported that he underwent two back surgeries in 2000 after which time he experienced problems sitting for extended periods (Tr. 37). He later stated that the two back surgeries occurred in 1993 and 1994 (Tr. 37). He indicated that he currently took Oxycontin for pain (Tr. 37). Plaintiff reported that pancreatitis had created the side effects of stomach upset and shortness of breath for the past two years (Tr. 38).

Plaintiff testified that he was able to prepare simple meals but did not perform other household chores (Tr. 38). He reported church attendance, adding that he regularly attended

an abbreviated service held early Sunday mornings (Tr. 38). He stated that he spent most of his waking hours in a reclining position watching television (Tr. 38). He estimated that he could sit for up to 30 minutes at a time and walk a "nice sized block" (Tr. 39). He indicated that he was able to lift up to 15 pounds (Tr. 39).

In response to questioning by his attorney, Plaintiff stated that he was "not good" at reading, adding that he took special education classes while in school (Tr. 39). He reported trouble filling out work applications (Tr. 40). He stated that he was devoid of energy during his waking hours and experienced nighttime sleep disturbances (Tr. 40). He alleged that disc degeneration of the cervical spine as well as lower back problems created discomfort (Tr. 40). He stated that fatigue obliged him to take three 30 to 45-minute naps each day (Tr. 40-41). He alleged that a learning disability created concentrational problems (Tr. 41). He stated that in 2007, he began work as a telemarketer, but was fired due to his need to change position on a regular basis (Tr. 42).

### B. Medical Records

#### 1. Treating Sources

May, 1976 academic records state that Plaintiff was intellectually average (Tr. 306). In September, 1980, Plaintiff demonstrated "near expectancy" in math skills but only second grade proficiency in reading skills (Tr. 298). September, 1981 academic records state that Plaintiff had been diagnosed with an emotional impairment, which was "not primarily the result of intellectual, sensory, or health factors . . ." (Tr. 296). May, 1984 academic records placed Plaintiff's mathematical skills at the third to fourth grade level (Tr. 284). A school

social worker found Plaintiff's behavior "manipulative" with "attempts to avoid work [and] angry when pinned down about behavior" (Tr. 284). He showed "little effort or interest" in science (Tr. 284, 288). June, 1995 Michigan Department of Correction ("MDOC") treating records show a GAF of 55[1] (Tr. 370).

Imaging studies taken in May, 2001 after an automobile accident showed unremarkable results (Tr. 319). Plaintiff sought emergency treatment in June, 2001 for back and left thumb pain (Tr. 315). Imaging studies showed two finger fractures but were otherwise negative for abnormalities (Tr. 314-315, 321, 323). In July, 2001, Plaintiff again complained of thumb pain (Tr. 311). An MRI of the thoracic spine showed a small disc herniation at T6-7 (Tr. 324). A treating source noted that "[i]t should be mentioned that the patient was essentially doing everything that he could to try to get more pain medication" (Tr. 311).

July, 2002 MDOC records state that Plaintiff reported back problems (Tr. 342). Treating notes also state that Plaintiff had five previous convictions, including assault and battery, and a history of substance abuse (Tr. 343, 346). July, 2006 MDOC records noted the absence of current mental health problems (Tr. 330, 333). January, 2007 treating records state that Plaintiff reported chronic neck and back pain (Tr. 413). He denied depression, but reported that pain medication caused the side effect of erectile dysfunction (Tr. 413). In

---

[1] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

March, 2007, Plaintiff sought emergency treatment for flu-like symptoms (Tr. 395-398). Plaintiff reported occasional drinking, daily tobacco use, and previous marijuana use (Tr. 395). He was administered Vicodin for back spasms (Tr. 395). A chest x-ray was negative for abnormalities (Tr. 397). The following month, Michigan Spine Care notes by Paul A. LaClair, M.D. state that a recent MRI showed a right disc herniation at C5-6 (Tr. 424). October, 2007 treating notes state that Plaintiff continued to report chronic neck and back pain (Tr. 417).

In November, 2007 and February, 2008, Dr. LaClair noted that Plaintiff currently took Vicodin, Flexeril, and Trazodone (Tr. 420). He observed that Plaintiff was "alert, pleasant and cooperative" (Tr. 420-421). July, 2008 imaging studies of the cervical spine showed "slight" cervical muscle spasm and disc space narrowing (Tr. 503). Studies of the lumbosacral spine showed evidence of a prior laminectomy with modest degenerative changes but no other abnormalities (Tr. 503). In June, 2010, K.P. Karunakaran, M.D. made a one-time only prescription for Oxycontin (Tr. 508).

### 2. Non-Treating Sources

An October, 2006 consultative examination performed on behalf of the SSA by Donald J. Cady, M.D. was unremarkable for physical limitations (Tr. 377-378). The same month, a Physical Residual Functional Capacity Assessment found Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 382).

In July, 2008, Siva Sankarah, M.D. conducted a second consultative examination of

Plaintiff on behalf of the SSA, noting that Plaintiff had been incarcerated between 1986 and 1991; 1995 to 2000; and 2002 to 2006 (Tr. 461). Plaintiff reported that he previously held a driver's license, but lost it in 1992 due to a drunk driving conviction (Tr. 461). He stated that during the same time period, he underwent two back surgeries after sustaining injuries in a car accident (Tr. 462). He also reported neck pain (Tr. 462). He stated that he was able to do "most of the home chores without difficulty" (Tr. 462). He indicated that he worked briefly as a telemarketer but lost the job due to reading problems (Tr. 462). Plaintiff reported problems in reading comprehension and spelling (Tr. 461).

Dr. Sankarah observed that Plaintiff did not experience problems walking but was unable to touch his toes (Tr. 46). Plaintiff exhibited normal manipulative abilities with a normal range of neck motion (Tr. 463). He reported problems completing job applications but admitted that he could write short letters (Tr. 464).

The same month, Eric VanderHaagen, D.O. completed a non-examining Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift/carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 472). Plaintiff was limited to frequent climbing, balancing, kneeling, and crawling; and occasional stooping and crouching (Tr. 473). The Assessment found the absence of additional limitation (Tr. 474-475).

In May, 2009, Robert Newhouse, M.D. completed a Psychiatric Review Technique, finding the presence of a learning disorder and a low to normal IQ (Tr. 441-442). Under the "'B' Criteria" findings, Dr. Newhouse found that Plaintiff experienced mild restriction in

activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 451). Dr. Newhouse cited school records showing low average intelligence; deficits in reading and spelling; and emotional impairment (Tr. 453). Dr. Newhouse also completed a Mental Residual Functional Capacity Assessment, finding moderate limitations in understanding, remembering, and carrying out detailed instructions (Tr. 455). Notwithstanding Plaintiff's mental limitations, Dr. Newhouse concluded that Plaintiff could "do simple tasks on [a] sustained basis" (Tr. 457).

### 3. Records Submitted After the July 27, 2010 Administrative Opinion[2]

In June, 2010, Plaintiff sought emergency treatment for blood in his stool (Tr. 517). His back was negative for tenderness upon palpitation (Tr. 517). He exhibited a steady gait (Tr. 519). He was treated and released in stable condition (Tr. 518). In June, 2011, Plaintiff sought emergency treatment for a knee injury but denied back or neck pain (Tr. 521-522). He denied current prescriptions (Tr. 524). In July, 2011, Plaintiff underwent an anterior lumbar interbody fusion at L4-L5 to address "postlaminectomy instability" (Tr. 512). He was discharged in stable condition with lifting limitations of five to ten pounds and no bending or twisting (Tr. 514).

---

2

Plaintiff does not cite the newer records in his arguments for remand. My own review of the newer evidence shows that it does not provide a basis for remand pursuant to the sixth sentence of 42 U.S.C. 405(g). For example, the July, 2011 surgical records would support the conclusion that Plaintiff experienced significant work-related limitations. However, the July, 2011 surgery has little if any relevance to whether he was disabled on or before the ALJ's July 27, 2010 determination. June, 2011 emergency room records for unrelated conditions which show that he could walk without difficulty would tend to support, rather than undermine, the ALJ's non-disability finding.

### C. Vocational Testimony

The ALJ posed the following question to VE McEachin:

I'd like to ask you a hypothetical question that's based on the report from Dr. Vanderhagen [] at Exhibit 21 F and Dr. Newhouse []at Exhibit 15 and 16F. I would like you to assume a person of the Claimant's age and education with no past relevant work, was able to perform light work as defined by the regulations[3] except that he can only occasionally stoop and crouch. In addition, he's limited to performing simple tasks on a sustained basis. Would there be any jobs in the national or regional economy that such a person could perform? (Tr. 43).

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the light, unskilled work of a hand packer (5,000 positions in the regional economy); porter (1,300); and inspector (10,000) (Tr. 43). The VE testified that if the same individual were unable to engage in sustained work due to pain and mental impairments, all gainful work would be precluded (Tr. 43). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 44).

In response to questioning by Plaintiff's counsel, the VE stated that the inability to

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

stay on task for 20 percent of the work day would preclude all work (Tr. 44-45).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found the severe impairments of "degenerative disc disease and low normal IQ" but found that neither condition met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-24). The ALJ found that Plaintiff experienced mild restriction in activities of daily living and moderate deficiencies in social functioning and concentration, persistence, and pace (Tr. 25). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [C]laimant can only occasionally stoop and crouch. He retains the ability to perform simple tasks on a sustained basis (Tr. 25).

Citing the VE's testimony, the ALJ determined that Plaintiff could work as a hand packer, sorter, and inspector (Tr. 27).

The ALJ discounted Plaintiff's allegations of long-term disability, noting imaging studies showing only minor degenerative changes and evidence of a prior laminectomy (Tr. 26). The ALJ found that Plaintiff had "a very poor work record, showing a lack of commitment to employment in general" (Tr. 26). He also noted that Plaintiff "had a positive drug screen for marijuana and opiates and an extensive criminal background" (Tr. 26). The ALJ also observed that Plaintiff did not exhibit trouble walking either into or out of the administrative hearing room (Tr. 26). He noted that the record contained "no significant complaints of medication side effects," adding that "[n]o physician reported that daily

napping or resting was a necessary or helpful measure . . ." (Tr. 26-27). Finally, the ALJ noted that none of the treating physicians opined that Plaintiff was disabled (Tr. 27).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Credibility

Plaintiff argues first that the ALJ failed to articulate the reasons for rejecting the Plaintiff's subjective claims of limitation. *Plaintiff's Brief* at 6-8 (citing *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 852 (6th Cir. 1986)). Plaintiff faults the ALJ for failing to address allegations of physical limitation as a result of back problems.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *Duncan, supra,* 801 F.2d at 853. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.*

Plaintiff does not dispute the ALJ's finding that degenerative disc disease was a severe impairment or that imaging studies from the relevant period do not support a disability finding. However, he appears to argue that the ALJ did not address the second prong of SSR 96-7p which directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[4]

Contrary to this argument, the ALJ's reasons for rejecting Plaintiff's allegations are well articulated and supported. The ALJ began the credibility analysis by acknowledging Plaintiff's allegations of limitation, including chronic neck and back pain; multiple daily

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:
 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

naps; and the need to rest in a reclining position for most of his waking hours (Tr. 26). The ALJ then provided reasons for rejecting the claims, relying on his own observation that Plaintiff did not experience any difficulty walking (Tr. 26). This finding is supported by emergency records showing that Plaintiff exhibited a normal gait and the absence of treating or examining records showing difficulty walking (Tr. 404). The ALJ also noted that as of the date of the administrative opinion, Plaintiff had not been hospitalized for "physical or mental difficulties" (Tr. 26).

The ALJ also noted correctly that the treating records did not contain allegations of work related medication side effects (Tr. 26, 413). While Plaintiff alleged the side effects of drowsiness, treating sources state that he appeared consistently alert (Tr. 420-421, 423, 425). Although he testified at the hearing that his household activities were limited to making simple meals, he reported earlier to a consultative source that he did not experience significant problems performing household chores. (Tr. 38, 462). Finally, the ALJ observed that none of Plaintiff's treating sources found that he was disabled (Tr. 27).

Because the credibility analysis does not contain procedural or substantive error, the motion for remand on this basis should be denied.

### B. The Vocational Expert's Testimony

Plaintiff argues next that the hypothetical question posed by the ALJ did not include all of his relevant limitations, contending that the omitted limitations invalidated the VE's job findings. *Plaintiff's Brief* at 8-10. However, he does not identify any specific deficiencies in the ALJ's question to the VE. Issues raised "'in a perfunctory manner,

unaccompanied by some effort at developed argumentation" are deemed waived.'" *Clemente v. Vaslo,* 679 F.3d 482, 497 (6th Cir. 2012)(citing *Langley v. DaimlerChrysler Corp.,* 502 F.3d 475, 483 (6th Cir.2007)).

Plaintiff also argues that the VE provided erroneous job testimony. *Plaintiff's Brief* at 10-11. He points out that the hypothetical question limited him to exertionally light, unskilled work *Id.* (citing Tr. 43). He claims that the job cited by the VE in response to the hypothetical question (hand packer, porter, and inspector) exceed either the exertional or skill limitations imposed by ALJ.[5] *Id.* Plaintiff points out that although the hypothetical question limited him to unskilled exertionally light work, the job of hand packer, DOT 920.587-018, and porter, DOT 324-477-010, are listed as exertionally medium jobs in the DOT. *Id.* at 10.

While it is true that listing DOT 920.587-018 describes an exertionally medium hand packer position, at least one other hand packing job found in the DOT is listed as exertionally light and unskilled. DOT 737.687-094. Likewise, while a number of the jobs listed under

---

[5] It is unclear whether the VE found that the hypothetical individual could work as a porter or as a *sorter.* The hearing testimony was transcribed to state that she cited the job of "porter" (Tr. 43). In contrast, the ALJ's states that the VE's testified that the individual could work as a "sorter" (Tr. 27). Because the DOT contains multiple light, unskilled sorter jobs, a vocational finding that Plaintiff could work as a sorter rather than a porter would defeat this argument. Even assuming that the sorter/porter inconsistency between the testimony and ALJ's decision invalidated this job finding, the job numbers cited by the VE for the positions of "hand packer" and "inspector" constitute a "significant number" (15,000) without the inclusion of the sorter/porter job numbers. *See Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir.1990), *citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)) (1,350 jobs in the local economy constitute a significant number); *Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006) (870 jobs in the claimant's geographic region a significant number).

-14-

the heading "porter" require exertionally medium work, at least one position is classified as light and unskilled. DOT 335.677-014. While Plaintiff also notes that the position of "inspector, general," is a semiskilled job (DOT 609.684-010) the DOT contains at least one position in the inspector category requiring only light, unskilled work. DOT 559.687-074. Notably, the VE did not testify that an individual limited to light, unskilled work could perform *any* hand packer, porter, or inspector position, but instead, provided job numbers showing a limited number of positions in each category (Tr. 43). Thus, Plaintiff's argument that the Commissioner did not meet its burden at Step Five is without merit.

In closing, it must be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's difficulties. However, substantial evidence supports the administrative decision. Because the ALJ's determination is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 31, 2013    s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 31, 2013, electronically and/or by U.S. mail.

s/ Michael Williams
Relief Case Manager for the Honorable
R. Steven Whalen

-16-